IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| OPUNA, LLC, a Hawaii limited ) | CIVIL NO. 05-00488 SOM/LEK |
| liability company and JERRY ) | |
| A. RUTHRUFF,                 ) | ORDER REMANDING CASE; |
|                              ) | VACATING MAGISTRATE JUDGE'S |
|          Plaintiffs,         ) | ORDER GRANTING DEFENDANT'S |
|                              ) | MOTION TO DISQUALIFY JERRY A. |
|      vs.                     ) | RUTHRUFF AS COUNSEL FOR |
|                              ) | OPUNA, LLC; DENYING |
| EMILY M. SABBAGH and L&M     ) | DEFENDANT'S REQUEST TO STRIKE |
| INVESTORS, a Hawaii general  ) | LARRY WHITE'S DECLARATION IN |
| partnership,                 ) | SUPPORT OF MOTION TO REMAND; |
|                              ) | AND DENYING DEFENDANT'S |
|          Defendants.         ) | REQUEST FOR RULE 11 SANCTIONS |
| _____ ) | |

ORDER REMANDING CASE; VACATING MAGISTRATE JUDGE'S ORDER
GRANTING DEFENDANT'S MOTION TO DISQUALIFY JERRY A. RUTHRUFF AS
COUNSEL FOR OPUNA, LLC; DENYING DEFENDANT'S REQUEST TO STRIKE
LARRY WHITE'S DECLARATION IN SUPPORT OF MOTION TO REMAND;
AND DENYING DEFENDANT'S REQUEST FOR RULE 11 SANCTIONS

I.      INTRODUCTION.

        Plaintiffs Opuna, LLC ("Opuna"), and Jerry A. Ruthruff

("Jerry") (collectively, "Plaintiffs") move this court to remand

this case to the Third Circuit Court of the State of Hawaii.

Plaintiffs argue that the removal by Defendant Emily M. Sabbagh

("Sabbagh") of this case to federal court on diversity grounds

was improper because the parties are not completely diverse.

Plaintiffs contend that, at the time the Complaint and Amended

Complaint were filed, Opuna consisted of two members, Larry White

("White") and David Ruthruff ("David").  Plaintiffs assert that

David is a Washington citizen, as is Defendant Sabbagh, and that

the parties are therefore not diverse.  Plaintiffs alternatively

argue that Defendant L&M Investors ("L&M") also destroys

diversity, as it is a citizen of Hawaii, as are Plaintiffs Opuna and Jerry.  Sabbagh counters that David is not a member of Opuna and is not a citizen of Washington.  Sabbagh also argues that David's alleged membership in Opuna "was manufactured for litigation."  In response to Plaintiffs' alternative argument, Sabbagh asserts that L&M was fraudulently joined and should be ignored for purposes of diversity.  The court concludes that Sabbagh has not met her burden of proving that this case was removable.  Plaintiffs' motion to remand is granted.

Also before this court is Jerry's appeal from Magistrate Judge Leslie E. Kobayashi's Order Granting Defendant's Motion to Disqualify Jerry A. Ruthruff as Counsel for Opuna, LLC ("Disqualification Order").  In that order, the magistrate judge disqualified Jerry from representing Opuna, but allowed him to represent himself pro se in this case.  On appeal, Jerry asks this court to "vacate Judge Kobayashi's Order, without prejudice to Defendant Sabba[g]h's right to bring her motion anew after the remand hearing--either in this Court, if this Court denies Plaintiffs' motion to remand and retains jurisdiction, or by filing a similar motion in the Third Circuit Court, if this Court agrees with Plaintiffs that diversity of citizenship does not exist and remands [the] case to state court."  Appeal at 6.  So as not to foreclose consideration by the state court of this

issue, the court vacates the Disqualification Order without reviewing its merits.

II.      LEGAL STANDARD.

When a case is removed to federal court, there is a strong presumption against federal court jurisdiction. See Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992) (citing Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n.3 (9th Cir. 1990)). A defendant who has removed a case bears the burden of proving the propriety of removal, including jurisdiction. See id.; see also Nishimoto, 903 F.2d at 712 n.3.

The Ninth Circuit strictly construes the removal statute against removal jurisdiction. See Gaus, 980 F.2d at 566 (citing Boggs v. Lewis, 863 F.2d 662, 663 (9th Cir. 1988)). Courts should resolve doubts in favor of finding federal jurisdiction to be lacking and thus in favor of remand. See id.; 28 U.S.C. §§ 1441(a), 1447(c); see also St. Francis Hosp. & Med. Ctr. v. Blue Cross & Blue Shield of Conn., Inc., 776 F. Supp. 659, 661 (D. Conn. 1991).

III.     BACKGROUND FACTS.

Opuna was formed and filed its Articles of Organization for Limited Liability Company ("Articles") on July 13, 2005. See Ex. D (attached to Opp.) at 1-2. At that time, Opuna's only member was White, a citizen of Hawaii. See Ex. D (attached to Opp.) at 1-2. Effective July 17, 2005, White sold to David, who

3

is Jerry's brother, a "10% membership interest in [Opuna] in
consideration for David's agreement to reimburse [Opuna] for the
first $50,000 of losses from [Opuna]'s loans and
investments . . . ."  Ex. K (attached to Sabbagh's First Supp.
Memo.) at 16-27; Deposition of David Ruthruff (7/31/2006) ("David
Depo.") at 10.  Both White and David signed the "Agreement for
Purchase of Membership Interest in LLC" and the "Opuna, LLC
Operating Agreement," confirming David's membership in Opuna.
Ex. K (attached to Sabbagh's First Supp. Memo.) at 16, 18-27.
White also signed the "Membership Certificate of OPUNA LLC,"
which "certifies that DAVID C. RUTHRUFF is the owner of Ten
Percent (10%) of the Membership Interests in Opuna, LLC."  Ex. K
(attached to Sabbagh's First Supp. Memo.) at 17.  David says he
still owns a 10 percent interest in Opuna.[1]  David Depo. at 38.

David says he was born in Washington and has "never
lived or resided anywhere other than the State of Washington
during any portion of [his] life or been outside the State of
Washington other than for vacations or short business trips."
Declaration of David Ruthruff (3/31/2006) ("David Decl.") ¶¶ 2-4.
He says he "has always considered the home in the Seattle area
where [his] family and [he] live to be [his] residence and
domicile."  Id. ¶ 6.  David alleges that he has "been a

---

[1] In his deposition, David says at one point that he
owns "[t]en percent of Larry's interest" in Opuna, but later says
he owns "10 percent of Opuna."  David Depo. at 28, 38.

registered voter in the State of Washington [his] entire adult life and [has] never been registered to vote in any other state." Id. ¶ 8.  Although David has purchased homes in Hawaii as investment properties and vacation homes, he says he "do[es] not now [have] and never ha[s] had any intention of moving [his] home, residence, or domicile from the State of Washington to any other state."  Id. ¶ 9.

On July 22, 2005, Opuna filed the Complaint against Sabbagh and L&M in the Third Circuit Court.  On July 29, 2005, Opuna filed its Amended Complaint, adding Jerry as a plaintiff. In the Amended Complaint, Plaintiffs allege that Sabbagh executed and delivered to Opuna an assignment of all of her rights, title, and interest in Ohana Group, LLC.  Am. Complaint ¶ 4.  Plaintiffs say that Sabbagh later claimed that the assignment was forged, was not supported by consideration, and was otherwise void.  Am. Complaint ¶ 5.  Plaintiffs seek a declaration that "Sabbagh executed and delivered the assignment and that the assignment is valid and binding on [Sabbagh]."  Am. Complaint ¶ 6.  Plaintiffs also seek a declaration that Jerry "did not owe or violate any fiduciary or professional responsibilities to [Sabbagh]."  Am. Complaint ¶ 23.  The Amended Complaint also alleges that L&M "claims that it is entitled to be compensated by Plaintiff Opuna and/or reimbursed by Plaintiff Opuna for expenses in connection with the assignment and/or Ohana Group, LLC."  Am. Complaint

¶ 25.  Plaintiffs seek a declaration that Opuna "does not owe [L&M] any amounts for compensation and or [sic] reimbursement of expenses in connection with the assignment, Ohana Group, LLC or any other matter."  Am. Complaint ¶ 26.  Plaintiffs also pray for fees and costs.

Sabbagh removed the original Complaint to this court on August 3, 2005, not having been served at the time with the Amended Complaint filed in state court a few days before removal. Sabbagh was not served with the Amended Complaint until December 6, 2005.  Notice of Removal of Amended Complaint ¶ 5. On December 28, 2005, Sabbagh removed the Amended Complaint to this court.  Plaintiffs moved for a remand, and the court ordered limited discovery relevant to the remand issue.

On February 7, 2006, Sabbagh filed a motion to disqualify Jerry as counsel for Opuna, asserting that he had prepared the disputed assignment agreement for her in the course of representing Opuna, and that Rule 1.9 of the Hawaii Rules of Professional Conduct therefore prohibits Jerry from representing Opuna in this case without her consent.  Sabbagh also argued that Rule 3.7 of the Hawaii Rules of Professional Conduct requires disqualification because Jerry is a necessary witness in this case.  After receiving supplemental memoranda from both parties, the magistrate judge concluded that Jerry was "unquestionably a necessary witness" and disqualified Jerry from representing

6

Opuna.  Disqualification Order at 13-16.  The magistrate judge
did not disqualify Jerry from representing himself in this case.
Disqualification Order at 16-19.  On April 28, 2006, Jerry
appealed the magistrate judge's Disqualification Order to the
district judge.

IV.      ANALYSIS.

         A.   Motion to Remand.

         Plaintiffs allege that this court lacks diversity
jurisdiction over this case because the parties are not
completely diverse.  Plaintiffs argue that, because David was a
member of Opuna at the relevant times and is a citizen of
Washington, no diversity exists between Plaintiff Opuna and
Defendant Sabbagh.  Sabbagh counters that the evidence does not
support Plaintiffs' assertion that David was ever a member of
Opuna or is a citizen of Washington.  Sabbagh alternatively
contends that David's alleged membership in Opuna "was
manufactured for litigation."  Because Sabbagh does not meet her
burden of proving the propriety of removal and jurisdiction, the
court grants Plaintiffs' motion to remand the case.

         A defendant may remove an action to federal court if
the plaintiff could have initially filed the complaint in federal
court.  28 U.S.C. § 1441(a).  Generally, a party may file an
action in federal court if there is diversity of citizenship
among the parties, or if the action raises a substantial federal

question.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  The party seeking removal bears the burden of establishing that removal was proper.  Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932, 934 (9th Cir. 1993). Moreover, § 1441 is strictly construed against removal. O'Halloran v. Univ. of Wash., 856 F.2d 1375, 1380 (9th Cir. 1988).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Gaus, 980 F.2d at 566.

        Under 28 U.S.C. § 1332, district courts have original jurisdiction over civil actions when the parties are of diverse citizenship and the matter in controversy exceeds $75,000.  A case falls within this court's diversity jurisdiction only if diversity is complete:  there can be no plaintiff and no defendant who are citizens of the same state.  See Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998).  Citizenship is determined by one's "state of domicile, not her state of residence."  Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  Id. (citing Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986)).  When a case is removed on the basis of diversity jurisdiction, diversity must be determined as of the time the

complaint was filed and removal was effected.  Strotek Corp. v. Air Transp. Ass'n of Am., 300 F.3d 1129, 1131-32 (9th Cir. 2002).

Sabbagh removed the Complaint and Amended Complaint on August 3, 2005, and December 28, 2005, respectively.  Removal was based on diversity jurisdiction.  The parties do not dispute that Plaintiffs are citizens of Hawaii and that Defendant Sabbagh is a citizen of Washington.  The parties do dispute whether Plaintiff Opuna is also a citizen of Washington.  If Opuna is a citizen of Washington, no diversity exists between Plaintiff Opuna and Defendant Sabbagh, and this case must be remanded.

Opuna is a Hawaii limited liability company.  Ex. D (attached to Opp.) at 1-2; Am. Complaint ¶ 1.  The Ninth Circuit has recently held that, for purposes of diversity jurisdiction, a limited liability company is a citizen of every state of which its owners or members are citizens.  Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("We therefore join our sister circuits and hold that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").  Therefore, Opuna is a citizen of each state of which its members are citizens.

Plaintiffs contend that David was a member of Opuna at the relevant times.  David says he permanently resides in Washington and intends to remain there.  David Dec. ¶¶ 2-9.  This evidence establishes that David is a citizen of Washington for

purposes of diversity jurisdiction.  See Kanter, 265 F.3d at 857 ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").

     Plaintiffs contend that David was a member of Opuna at all relevant times.  Motion at 6.  At David's July 31, 2006, deposition, he testified that he became a member of Opuna sometime between July 14 and 17, 2005.  David Depo. at 80-82, 87-89; see also Ex. J (attached to Sabbagh's First Supp. Memo.) at 16-27.  David explained that, as of July 31, 2006, he was still a member of Opuna and did not intend to sell his interest in Opuna.[2]  David Depo. at 38, 144-45.  According to this

_____

     [2] Originally, Sabbagh argued in her opposition memorandum that "the documentation and evidence to date indicates that the sole member of Opuna at the time this action was filed was Larry White."  Opp. at 4.  However, the parties have since supplemented the record with David's declaration of March 31, 2006, and his deposition testimony taken July 31, 2006, both of which include statements by David supporting Plaintiffs' assertions that David was a member of Opuna and a citizen of Washington at the relevant times.

     Similarly, because the only evidence of David's membership at the time Sabbagh filed her opposition memorandum was White's declaration of February 7, 2006, Sabbagh's opposition memorandum challenged that declaration as unsupported "by any documentation whatsoever evidencing David Ruthruff's purported interest in Opuna and the dates he held such purported interest."  Opp. at 9, 12-13.  Because the parties supplemented the record with David's declaration and deposition testimony, the court need not and does not rely on White's declaration (or deposition testimony) regarding David's membership in Opuna.  Therefore, the court declines to strike White's declaration as requested by Sabbagh.  See Sabbagh's First Supp. Memo. at 12.

evidence, David was a member of Opuna at the time the Complaint and Amended Complaint were filed in state court, and at the time Sabbagh removed those complaints.  See Strotek Corp., 300 F.3d at 1131-32.

Challenging David's statements in his declaration and deposition testimony, Sabbagh points to evidence that Jerry was the sole member of Opuna by October 5, 2005.  Opp. at 6.  Sabbagh relies on a declaration by Deborah Crabbe ("Crabbe"), an attorney involved in a related Washington state court case, Sabbagh v. Ohana Group, LLC and Fremont Red Apple Market, LLC, Civil No. 05-2-26554-0 SEA.  Opp. at 6; Declaration of Deborah Crabbe (2/15/2006) ("Crabbe Decl.") ¶¶ 1, 6.  In her declaration, Crabbe says:  "On October 5, 2005 I personally met with Jerry A. Ruthruff.  During this meeting I asked Mr. Ruthruff who the members of Opuna LLC were.  Mr. Ruthruff stated that he was the only member of Opuna LLC."  Crabbe Decl. ¶ 6.  Sabbagh also

---

Additionally, Sabbagh contends that White's declaration "appears on its face to be materially false and, as such, constitutes perjury in violation of federal law."  Opp. at 10. She also argues that "[Jerry's] participation in procuring such declaration constitutes subornation of perjury" and is a violation of Rule 11 of the Federal Rules of Civil Procedure, warranting sanctions.  Opp. at 10-11.  Sabbagh argues that White and Jerry knew that Opuna had only one initial member.  Because neither White nor Jerry made contrary representations to this court, the court does not find, on the present record, that White perjured himself in this regard or that Jerry violated Rule 11. Sabbagh may raise this issue in state court on an expanded record, although, of course, any Rule 11 allegation must comply with state court procedural rules governing such allegations.

11

points to Opuna's and Jerry's financial balance sheets, which Sabbagh contends show that Jerry claimed Opuna's $655,000 in assets as his "[e]quity in Opuna LLC." Opp. at 6; see Exs. B and C (attached to Opp.). Sabbagh argues that this evidence establishes that Jerry was the sole member of Opuna by October 5, 2005, and that David could not have been a member thereafter.

Other evidence in the record, however, suggests that Jerry was not the sole member in October 2005. A Membership Certificate attached to Sabbagh's first supplemental memorandum indicates that White transferred his 90 percent interest in Opuna to Ralsug Investments, LLC ("Ralsug"), on April 1, 2006. Ex. N at 45-47. This evidence cuts against Sabbagh's argument that Jerry has been the sole member of Opuna since October 5, 2005.

There is thus, on the one hand, evidence that David has been a member of Opuna from July 2005 to the present. On the other hand, there is evidence that Jerry has been the sole member of Opuna since October 5, 2005. Compare David Depo. at 80-82, 87-89, 144-45; Ex. J (attached to Sabbagh's First Supp. Memo.) at 16-27, with Crabbe Decl. ¶ 6; Exs. B and C (attached to Opp.). This court must resolve all doubts in favor of finding no federal jurisdiction. The court therefore relies on the evidence that David was a member of Opuna from at least October 2005 until July 31, 2006, when his deposition was taken. See Gaus, 980 F.2d

at 566.  Thus, David was a member of Opuna on the dates of removal.

Sabbagh alternatively urges this court to disregard David's membership in Opuna for purposes of determining diversity jurisdiction, on the ground that his membership was "manufactured for litigation."  Sabbagh's First Supp. Memo. at 4-9.  Citing Attorneys Trust v. Videotape Computer Products, Inc., 93 F.3d 593, 598 (9th Cir. 1996), Sabbagh argues that this court must consider the following "factors to determine if an assignment is but a manipulation designed to destroy diversity":

> whether there were good business reasons for the assignment; whether the assignee had a prior interest in the item or whether the assignment was timed to coincide with commencement of litigation; whether any consideration was given by the assignee; whether the assignment was partial or complete; and whether there was an admission that the motive was to destroy diversity jurisdiction.  The opportunity for collusion is a key factor.

Sabbagh's First Supp. Memo. at 4-5 (citing Attorneys Trust, 93 F.3d at 565-96).  Sabbagh argues that consideration of these factors requires the conclusion that White's assignment to David of a 10 percent interest in Opuna "was made purposely to destroy diversity."  Sabbagh's First Supp. Memo. at 9.  The court disagrees.

In Attorneys Trust, 93 F.3d at 594, CMC Magnetics Corporation ("CMC"), a Republic of China corporation, claimed

that Videotape Products, Inc. ("VTP"), a California corporation, was indebted to it.  It was undisputed that CMC had sold 1,300,000 videotape housings to VTP and that, rather than paying CMC for them in cash, VTP purported to offset the amounts due against other debts owed by CMC to VTP.  Id.  CMC wanted to collect the price of the housings from VTP.  Id.  CMC contacted Attorneys Trust ("AT"), a collection agency with citizenship in California, and assigned its claim against VTP to AT "for collection purposes only."  Id.  AT was to attempt to collect the alleged debt and was to receive 12 percent of amounts collected for its trouble.  Id.  AT thus filed a diversity action in federal court against VTP.  Id.  When VTP cross-complained against CMC, the attorney representing AT also appeared on behalf of CMC.  Id.  The district court found in favor of VTP, and CMC and AT appealed, arguing that the district court lacked jurisdiction because both AT and VTP, the original parties, were citizens of California.  Id.

On appeal, the Ninth Circuit noted that a "plaintiff may attempt to create or destroy diversity jurisdiction by making a transfer which is an assignment in name only.  In either case, the plaintiff tampers with the jurisdiction of the court by artificially affecting it."  Id. at 595.  Although "the case at hand [was] a destruction of diversity case," the court "survey[ed] the cases which refer to creation of diversity

because the informing principles are much the same." Id. The court said that, in "creation of diversity cases,"

> courts have set out a number of factors which
> are to be considered in deciding whether an
> assignment is improper or collusive.  Among
> them are:  were there good business reasons
> for the assignment; did the assignee have a
> prior interest in the item or was the
> assignment timed to coincide with
> commencement of litigation; was any
> consideration given by the assignee; was the
> assignment partial or complete; and was there
> an admission that the motive was to create
> jurisdiction.
>
> There is some doubt that the subjective
> "motive" element is entitled to great weight.
> Certainly, there is no reason to give motive
> controlling weight in every case, although it
> will surely illuminate an otherwise hidden
> improper motive and may be virtually
> controlling in some cases.  The objective
> fact of who really is the party in interest
> is the most important thing to be determined.

Id. at 595-96 (internal citations omitted).

Regarding cases where assignments of claims were intended to destroy jurisdiction, the court noted:

> There has been much less case law on the
> question of assignments which destroy
> jurisdiction. . . .  [W]hat modern authority
> there is also focuses on the reality of the
> transaction.  Motive, again, is a factor, but
> courts have remained sensitive to and
> concerned by manipulations of their
> jurisdiction with partial assignments which
> lack reality and amount to no change in the
> identity of the party with the real interest
> in the outcome of the case.

Id. at 597.  After reviewing cases from other jurisdictions that found assignments of claims improper because they were created to

15

destroy diversity jurisdiction, the Ninth Circuit characterized those cases as "cases where the assignee was not truly a party in interest.  Rather, the assignee was a strawman and had no real interest in the outcome of the case, although a good outcome would have had some economic value."  Id. at 598.

Applying the foregoing principles to the underlying facts in Attorneys Trust, the court concluded that "jurisdiction was not destroyed in this case when CMC assigned an account for collection to AT."  Id. at 599.  The Ninth Circuit said:

> There can be no doubt that the assignment was solely for collection and that AT was simply to get a 12% contingent fee for its trouble. . . .  When CMC itself was sued, AT's counsel merely answered the cross-complaint for CMC, and the litigation proceeded.  In other words, the case has almost all of the classic elements of an assignment which does not affect jurisdiction:  AT had no prior interest in the claim, and the assignment was timed to coincide with the commencement of litigation; the assignee gave no consideration other than its own collection work for a contingent fee, which could have been effectuated without an assignment; because 88% was to go to CMC, the assignment was partial, and, ultimately, the same counsel represented both CMC and AT. The true involvement of CMC is further underscored by the fact that while AT was the nominal party in the complaint, it alleged that CMC should be called the plaintiff.  AT further asserted that jurisdiction was founded upon 28 U.S.C. § 1332(a)(2), which, of course, defines jurisdiction between a citizen of one state and a citizen of a foreign state.  That is another clear indication that CMC was the real party in interest in this case.  Finally, when CMC did become a cross-defendant in the case, AT's

16

attorneys went on representing it with no
further ado.

Id. at 599 (internal citation omitted).  In so concluding, the

court noted:

> This case presents the most unusual
> situation of a party who took an assignment
> for collection and who only later decided
> that the assignment destroyed diversity
> jurisdiction, even though destruction was not
> the motive.  Thus, this case comes up in the
> context of an action filed directly in the
> district court rather than in the removal
> context.
>
> We hold that when an action is filed
> directly in the district court the federal
> courts are empowered to determine their own
> jurisdiction.  In doing so, they may look to
> all of the facts and circumstances and ask
> whether the assignment did destroy diversity
> jurisdiction.  When that is done in this
> case, the answer is in the negative.  Thus,
> while AT and CMC might wish that they had not
> entered our portals, they did--their
> tergiversation comes too late.

Id. at 600.

Attorneys Trust is distinguishable from the present

case because it involved an assignment of a claim and was filed

directly in federal court.  The present case involves an

assignment of an interest in a limited liability company and was

filed in state court.  On that basis alone, Attorneys Trust is

unpersuasive.  Even if this court applies the factors on which

Sabbagh relies, this court concludes that Sabbagh does not, on

17

the present record, meet her burden of establishing a collusive assignment.

As discussed above, the Ninth Circuit noted that other courts have considered various factors in deciding whether assignments of claims are collusive. Those factors are: (1) "were there good business reasons for the assignment"; (2) "was any consideration given by the assignee"; (3) "was there an admission that the motive was to [destroy] jurisdiction"; (4) "was the assignment partial or complete"; and (5) "did the assignee have a prior interest in the item or was the assignment timed to coincide with the commencement of litigation." Id. at 596-97.

The first three factors, on the present record, cut against finding a collusive assignment. First, David says he became a member of Opuna to invest in real estate and to share some of the business risk with White. David Depo. at 12-15. David explains:

> [Jerry] told me that Larry White was upset
> with Jerry that Jerry had facilitated a
> transaction involving [White]; and that now
> there was a lawsuit involved, and that
> [White] wanted Jerry to invest in this
> property to share the risk with [White], and
> he--Jerry couldn't invest in it or didn't
> feel it was appropriate because of his
> friendship with the other party and asked me
> if I would in his stead.

David Depo. at 13-14. David also explains that he trusted Jerry's advice that investing in Opuna would prove profitable:

18

> Q  Did [Jerry] explain why he thought it
> would be a good investment?
> A  We didn't get into too many details, but I
> trust his judgment.  He's gotten me into
> several other investments, and he's been spot
> on.  He got me into my present business.  He
> got me into my Kona properties.  And when he
> suggested that this would be a good
> investment, it was a real estate investment
> in a property we happened to visit one time
> prior to that--that was good enough for me.

David Depo. at 15.  Because David became a member of Opuna to share the business risk with White and to invest in real estate, David's membership in Opuna appears, on the present record, to have been supported by "good business reasons."  See Attorneys Trust, 93 F.3d at 595.

Second, David, at least on paper, seems to have given consideration for his membership.  The Agreement for Purchase of Membership Interest in LLC, signed by David and White, states, "[White] hereby sells to David Ruthruff a 10% membership interest in [Opuna] in consideration for David's agreement to reimburse [Opuna] for the first $50,000 of losses from the Company's loans and investments . . . ."  Ex. J (attached to Sabbagh's First Supp. Memo.) at 16.  Although no money changed hands at that time, David's promise to pay the first $50,000 in losses appears, on the present record, to have been valid consideration for his membership in Opuna.

Third, the record lacks any evidence indicating that the motive for the assignment was to destroy jurisdiction.

The answers to the fourth and fifth factors favor finding that the assignment to David may have been collusive. The fourth factor asks whether the assignment was partial or complete. David had a partial assignment of a 10 percent interest in Opuna, and White retained the remaining 90 percent interest. The fifth factor asks whether the assignee had a prior interest in the item or whether the assignment was timed to coincide with the commencement of litigation. David had no prior interest in Opuna, and the assignment occurred shortly before this action was filed.

In sum, even considering those factors set forth in Attorneys Trust, the court is not convinced that Sabbagh meets her burden of showing that the assignment of a 10 percent interest in Opuna was collusive. David was assigned only a 10 percent interest in Opuna and had no prior interest in Opuna, but "an LLC is a citizen of every state of which its owners/members are citizens." See Johnson, 437 F.3d at 899. The timing of David's membership in Opuna certainly does raise questions, but this court must resolve all doubts in favor of finding no federal jurisdiction. See Gaus, 980 F.2d at 566; O'Halloran, 856 F.2d at 1380 (noting that section 1441 is strictly construed against removal). In so ruling, this court does not foreclose Sabbagh from raising the collusion issue on an

expanded record in state court, to the extent the issue becomes relevant when the merits are litigated.

Because this court concludes that David was a member of Opuna and a citizen of Washington at the time the complaints were filed and removal was effected, diversity jurisdiction is lacking between Plaintiff Opuna and Defendant Sabbagh.[3]  The court therefore grants Plaintiffs' motion to remand the case to the Third Circuit Court.[4]

B.    Appeal of Magistrate Judge's Order.

In light of the court's conclusion that it lacks jurisdiction over this case, the court vacates the magistrate judge's Disqualification Order to permit the state court to consider the matter.  In so doing, the court is not suggesting that the magistrate judge erred in addressing Sabbagh's motion for disqualification before this court addressed the jurisdictional issue.  The disqualification motion presented a "chicken or the egg" situation.  That is, it was unclear whether the disqualification motion should be decided before the jurisdiction motion, to eliminate any danger of having the

---

[3] The court need not consider Plaintiffs' alternative argument that L&M is a Hawaii citizen for purposes of diversity jurisdiction, Motion at 7-9, as the court's conclusion that Opuna and Sabbagh are both citizens of Washington establishes the lack of complete diversity.

[4] The court remands the case to the Third Circuit Court.  Whether venue should be transferred to the First Circuit Court is left to the state court to address.

jurisdictional issue litigated by counsel improperly, or whether the jurisdictional issue should be addressed first, so that the court would not risk ruling on matters beyond its jurisdiction. In any event, now that the court has resolved the jurisdictional issue, it appears to this court that the state court should not find itself bound by the court's nonjurisdictional rulings.  For that reason only, this court vacates the Disqualification Order, expressing no opinion on whether it would have affirmed or reversed the order in whole or in part.

V.      CONCLUSION.

        For the foregoing reasons, the court grants Plaintiffs' motion to remand this case to the Third Circuit Court.  The court also vacates the magistrate judge's order disqualifying Jerry as Opuna's counsel.  Sabbagh's motion to strike White's declaration and Sabbagh's request for Rule 11 sanctions are denied without prejudice to Sabbagh's raising of the issues in state court.  Any pending motion or request not expressly disposed of by this order is terminated.  The Clerk of Court is directed to send a

certified copy of this order to the Third Circuit Court in Hilo and to close this case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 15, 2006.



_____
Susan Oki Mollway
United States District Judge

**Opuna, LLC, et al. v. Sabbagh, et al.**, Civ. No. 05-00488 SOM/LEK; ORDER REMANDING CASE; VACATING MAGISTRATE JUDGE'S ORDER GRANTING DEFENDANT'S MOTION TO DISQUALIFY JERRY A. RUTHRUFF AS COUNSEL FOR OPUNA, LLC; DENYING DEFENDANT'S REQUEST TO STRIKE LARRY WHITE'S DECLARATION IN SUPPORT OF MOTION TO REMAND; AND DENYING DEFENDANT'S REQUEST FOR RULE 11 SANCTIONS.